## JAMES CATTEL *against* RICHARD E. WARWICK.

A purchase of the equity of redemption by the mortgagee is not an extinguishment of the attendant bond, and, therefore, in an action of assumpsit by the mortgagor against the mortgagee for goods sold, the mortgagee may set off his bond, notwithstanding his purchase of the equity of redemption.

---

This cause came before the court on a writ of error directed to the Common Pleas of Gloucester county. Warwick, the defendant in error, had prosecuted Cattel in an action of assumpsit for goods sold. Cattel plead the general issue, and gave notice of offset. Upon the trial before the

Common Pleas, a number of questions were raised, and bills of exceptions taken to the opinion of the court. But the question upon which the cause turned in the Supreme Court, and which, alone, it is thought necessary to notice, arose upon the following facts. After the plaintiff had rested his cause, Cattel, the defendant, " to maintain and prove the issue on his part, offered two certain bonds, executed by Warwick, the plaintiff, to Cattel, the defendant, dated 15th February, 1816, one conditioned for the payment of $500, on or before the 25th March, 1817; the other conditioned for the payment of $1100, on or before the 25th September, 1818; the execution of which bonds the plaintiff admitted. But to the admission of these bonds in evidence, the counsel for the plaintiff objected, and offered to shew to the court that the said two bonds, together with another bond for the sum of $700, payable on the 1st May, 1816, were given by the plaintiff to the defendant, for the consideration money, or price of a certain tavern-house and plantation, sold by the defendant, Cattel, to the plaintiff, Warwick; and that, to secure the payment of the said several bonds, Warwick gave to Cattel a mortgage of the same date, on the said tavern-house and plantation; that in the term of October, 1816, Cattel entered up judgment on the first bond, for $700, by virtue of a warrant thereto annexed; and that on the 9th day of November, 1816, he issued out an execution of *fieri facias de bonis et terris,* by virtue of which the sheriff levied on the equity of redemption of Warwick in the mortgaged premises, and afterwards, on the 4th August, 1817, sold all the estate of Warwick in the said mortgaged premises, subject to all legal incumbrances, for the sum of $798, and conveyed the said premises to Cattel by deed, executed according to law, and bearing date the 16th of August, 1817, which said several facts, so offered in evidence on the part of the plaintiff, Warwick, were admitted by Cattel, the defendant; whereupon the counsel for the plaintiff insisted, that inasmuch as the defendant had

entered judgment on one of the bonds mentioned in the mortgage, and sued out execution, and caused the equity of redemption of the plaintiff in the mortgaged premises to be levied on and sold, to satisfy part of the mortgage debt, and he himself became the purchaser thereof, subject to the said mortgage; that the land became debtor to the money, and the said bonds or debts, as between the mortgagor and mortgagee, became extinguished, and, therefore, that the said several bonds, so offered in evidence, were not a subsisting debt due from the plaintiff to the defendant, and could not be offset in this action; whereupon the counsel for the defendant insisted, that the said several bonds, so offered in evidence, were lawful evidence, and prayed that the same might be admitted as a lawful offset in the cause under his notice. But the court declared the said bonds inadmissible evidence, and overruled the same; and the counsel of the defendant took a bill of exceptions to this opinion of the court. The jury found a verdict for $242; and now the error assigned for the reversal of this judgment of the Common Pleas, was the rejection of these two bonds as evidence on the part of the defendant.

*Armstrong,* for plaintiff in error, contended, that the bonds ought to have been admitted in evidence, because they were legal and subsisting claims against the plaintiff, and were not extinguished by the purchase of the mortgaged premises by Cattel, upon the sale, under his judgment on the first bond. He did not feel disposed to contend that, in equity, the debt might not be considered as extinguished, but no court of law could say, that these bonds were extinguished by these circumstances. In *Hatch* v. *White,* 2 *Gallison* 152, it was determined, that after " a foreclosure of a mortgage, the mortgagee may still recover at law, upon the attendant bond or note, the deficiency of the mortgaged property to pay the debt due." This case fully sustained the distinction between the construction

given to these instruments accompanying mortgages, by the courts of equity and courts of law, and established the position, that a foreclosure is no bar to an action upon the attendant bond. If, then, Cattel, upon a foreclosure of his mortgage and a sale of the mortgaged premises, without raising sufficient thereby to pay his mortgagee, would not be prevented from prosecuting on his bond, why should he in this case, where the property was sold and purchased by him for less than the mortgage debt? And if he might prosecute the plaintiff at law upon these bonds, then they are good as an offset, and ought to have been admitted.

*Ewing*, on same side, cited 2 *Powell on Mortgages* 1075, case of *Tooke* v. *Hartley*, also reported 2 *Bro. Cha. Rep.* 126, and the case of *Perry* v. *Parker*, 8 *Ves.* 528.

*Wall*, contra. In England, an equity of redemption is beyond the control of a court of law. It exists only in a court of equity, and, therefore, the cases from the English books do not apply, because an actual foreclosure of the equity of redemption is an extinguishment of the accompanying bond. I admit, that where the mortgagee afterwards proceeds on his bond, that is considered as opening the foreclosure of the equity of redemption. There is no case to be found in the English books in which the mortgagee, holding the property in possession by an absolute foreclosure, has a right to proceed upon his bond, until he has taken the property into market and sold it, without such prosecution of the bond being considered as an opening of the foreclosure. 8 *Ves.* 527. In the case from *Vesey*, after an absolute foreclosure of the mortgage and the sale, the party was not permitted to proceed on the bond to recover the difference at law. I admit, that since that case in England, the doctrine has been settled the other way. But the court will recollect, that there the equity of redemption cannot be reached at law. But in this state it is different; here the

Cattel *v.* Warwick.

equity of redemption is considered the legal estate ; it may be taken on execution ; it has a legal existence, and may be reached by legal process. May not this manner of considering equities of redemption in this state, introduce a new rule, founded upon general principles ? Are we not at liberty to form rules adapted to the exigencies of society ? or, must we be fettered by principles drawn from English books, which have no application here ? There was no objection to the execution of the bonds at the time they were offered in evidence as an offset. The simple question was, whether when a man gives a bond and warrant of attorney, and enters up judgment upon one of the bonds, and seizes upon the mortgaged property and sells it, it was an extinguishment of the other bond. In New Jersey, the mortgagee has three remedies : first, by ejectment ; second, on the bond ; third, by bill to foreclose. But all these modes are intended to accomplish the same object, to enable the mortgagee to recover the debt. But where he has taken the fund, *viz.* the equity of redemption, which was intended for the payment of the debt, he cannot be permitted to proceed upon the bond. The great difference between equity and law, is the mode of arriving at proof, but where the proof is ascertained, can there be any difference in the application of general principles ? What is the right which a purchaser at public sale acquires ? He purchases only subject to the mortgage ; but if the mortgagee himself purchases, can he be in a better situation ? Suppose Cattel had given twenty dollars for the equity of redemption, could he hold the redemption for that sum, and pursue the bond also ? In New York, the equity of redemption is reached by execution, as in this state, and, therefore, the decisions of their courts are entitled to more deference than any English cases. 2 *John. Ch.* 125 ; 3 *Ib.* 55. In this last case, the purchaser had bought in the equity of redemption, and afterwards takes an assignment of the mortgage debt ; there, the Court of Chancery hold, that it is an extinguishment of the mortgage ; here the equity of redemption is the legal estate ;

Cattel *v.* Warwick.

but in England it is considered as the equitable estate. See the case in Chancery of this state of *Crane & Williamson,* where this doctrine was held by the chancellor.

*Ewing,* in reply, said, it is contended that the fact stated in the bill of exceptions operated as a complete extinguishment in law of the right of Cattel to recover upon these bonds, and that, therefore, they could not be received as an offset. But he contended, that in a court of common law the obligee had a full and complete right to prosecute upon the bonds, and that the circumstances stated in the bill of exceptions were not an extinguishment of the bonds, whatever might be the rule in equity. The cases cited from *Johnson* are cases of application to Chancery. Let us suppose that Cattel had prosecuted Warwick at law upon the bonds, could Warwick set up these circumstances as a defence? No! it is in equity only that he could make any such defence, and I shall shew, hereafter, that he could not avail himself of it, even in equity. But the opinion of Judge Story, in *Gallison,* is express that such a defence could not be set up at common law. However it may be with regard to the effect of a purchase of this kind in equity, there is no power in a court of common law which can preclude the party holding the bond from proceeding to recover it. But, even in a court of equity, the person holding the bond would be at liberty to proceed. It is true some difference exists in our mode of proceedings as to equity of redemptions, and that of the proceedings in England. But if in England, after a foreclosure, the mortgagee may proceed upon the bond, much more may he in this state, where he has merely purchased the equity of redemption. It is said, that the foreclosure in England is an extinguishment of the debt, but this position is incorrect. The cases are all reviewed by Judge Story in 2 *Gallison,* and he comes to the conclusion, that notwithstanding the foreclosure, and notwishstanding the sale, the mortgagee may proceed upon the bond.

Dickerson *v.* Robinson et al.

*Per Curiam.* We are of opinion, that the judgment must be reversed. The purchasing of the equity of redemption does not cancel the bonds; therefore they ought to have been admitted as a legal set off. What equities may arise, is another question; as to these, the defendant must seek relief in a court of equity.